IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRENDA CALLAWAY,

                    Plaintiff,
         v.                                                    OPINION and ORDER

ANDREW M. SAUL,                                                  19-cv-818-jdp
Commissioner of the Social Security

                    Defendant.

---

Plaintiff Brenda Callaway seeks judicial review of a final decision of defendant Andrew

Saul, Commissioner of the Social Security Administration, finding Callaway not disabled

within the meaning of the Social Security Act. Callaway contends that the administrative law

judge (ALJ), Joseph D. Jacobson, erred by: (1) giving flawed reasons for discounting the opinion

of examining consultant Sandra Frodin; and (2) failing to include all of Callaway's limitations

in the residual functional capacity assessment (RFC).

The court is not persuaded that the ALJ erred, so it will affirm the commissioner's

decision. The oral argument scheduled for May 14, 2020, is canceled.


ANALYSIS

Callaway seeks benefits for disability beginning in August 2013, when Callaway was 43

years old. R. 24.[1] This is the second time Callaway's disability application is before this court.

The parties stipulated to a remand in *Callaway v. Berryhill*, No. 18-cv-154-jdp (W.D. Wis., filed

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

Mar. 5, 2018), though they didn't explain why. After the remand, the agency held a new hearing and issued a new decision.

In his June 2019 decision, the ALJ found that Callaway suffered from numerous severe physical and mental impairments, but the only ones relevant to the issues on appeal are migraine headaches, depression, bipolar disorders, anxiety disorder, posttraumatic stress disorder, and personality disorder. R. 1227. In light of Callaway's physical impairments, the ALJ found that Callaway can perform light work. As for Callaway's mental limitations, the ALJ found that Callaway is able to carry out simple instructions, adapt to occasional changes, make decisions occasionally, and interact with coworkers and supervisors occasionally. But the ALJ also found that Callaway cannot perform "piecework" or "fast-moving assembly-line type work," interact with the public, or perform "tandem tasks." R. 1236. Relying on the testimony of a vocational expert, the ALJ found that Callaway could not perform past work as an order clerk or sewing machine operator but that she could perform jobs that exist in significant numbers in the economy, including jobs such as assembler, housekeeper/cleaner, and inspector. R. 1248.

The case is now before this court to determine whether the ALJ's decision applies the correct legal standards and is supported by "substantial evidence," *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020), which means that the court looks to the administrative law record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency "is not high"; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

## A.  Medical opinions related to mental limitations

In assessing Callaway's mental limitations, the ALJ considered the opinions of Kristi Paulsen, a "licensed practical counselor" who treated Callaway; Sandra Frodin, an examining psychologist; and Esther Lefevre and Edmund Musholt, state agency psychologists who reviewed the medical records. The ALJ did not specify how much weight he was giving to Paulsen, but he said that her opinion was generally consistent with the RFC and did not support greater restrictions. R. 1244. He gave Frodin's opinion "very limited weight," and he gave "great weight" to the opinions of the reviewing consultants. Callaway doesn't discuss Paulsen in her opening brief, but she says that the ALJ erred in his handling of the other opinions, and specifically in failing to give greater weight to Frodin.[2]

Callaway points specifically to Frodin's opinions that Callaway had "marked" limitations in three areas: maintaining concentration, attention, and work pace; withstanding routine work stress; and adapting to change. Callaway says that she would meet the requirements for disability if the ALJ accepted these opinions, and the commissioner doesn't dispute that.

The ALJ gave multiple reasons for giving little weight to Frodin's opinion, including: (1) it was inconsistent with Frodin's mental status examination findings, including those related to Frodin's ability to concentrate, which was normal; and (2) it was inconsistent with Callaway's recent work history, which did not suggest that Callaway had difficulty with work-related stress. Both of these reasons are adequate on their face. *E.g.*, *Burmester v. Berryhill*, 920

---

[2] In her reply brief, Callaway criticizes the ALJ's evaluation of Paulsen's opinion as well, but Callaway forfeited this issue by failing to raise it in her opening brief.  *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005). In any event, Callaway doesn't explain how Paulsen's opinion supports greater restrictions than those found by the ALJ.

F.3d 507, 512 (7th Cir. 2019) (ALJ did not err in declining to give more weight to opinion of treating physician when opinion was inconsistent with physician's own notes); *Castile v. Astrue*, 617 F.3d 923, 927–28 (7th Cir. 2010) (ALJ may consider whether claimant's work history after her onset date is inconsistent with her claimed limitations).

Callaway doesn't address the ALJ's second reason, and she doesn't directly challenge the ALJ's conclusion that Frodin's opinions were inconsistent with the results of her examination. Instead, Callaway contends that the ALJ was "playing doctor" by comparing Frodin's opinions to the results of her examination.

Callaway is significantly overstating the rule on which she relies. An ALJ may not interpret evidence that is beyond the abilities of a lay person to understand. *Salvino v. Saul*, No. 19-cv-422-jdp, 2020 WL 467902, at *2 (W.D. Wis. Jan. 29, 2020) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). But that rule doesn't preclude the ALJ from using common sense to evaluate all the evidence, including medical records. *Ross v. Berryhill*, No. 18-cv-215-jdp, slip op. at 4 (W.D. Wis. Dec. 14, 2018) ("[I]t makes sense that ALJs would be permitted to consider medical records without the assistance of an expert when the records do not require medical expertise to interpret."). The court of appeals has acknowledged that it is appropriate in some circumstances for ALJs to directly consider medical records. *E.g., Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014). And the court has stated many times that it is appropriate to consider an expert's internal inconsistencies when determining how much weight to give an opinion. *E.g., Gibbons v. Saul*, No. 19-1885, — F. App'x —, 2020 WL 376499, at *4 (7th Cir. Jan. 23, 2020); *Hinds v. Saul*, 799 F. App'x 396, 399 (7th Cir. 2020); *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015).

4

In this case, the ALJ did not need medical expertise to identify inconsistencies between Frodin's examination and her opinions. The results of Frodin's mental status examination are written in plain English, and it was reasonable for the ALJ to find that the results do not support the limitations in her opinion. For example, Frodin concluded that Callaway had a marked limitation in "maintaining concentration," but she also observed that Callaway successfully completed all of the concentration exercises that Frodin asked Callaway to perform. R. 426. In fact, in nearly every category that Frodin tested, including memory, orientation, fund of knowledge, thought content, and abstract thinking, Frodin did not observe any remarkable results. *Id.* at 425–26. Although Callaway says that the mental status examination was objective evidence that supported Frodin's conclusions, Callaway doesn't identify any portion of the examination that provides support. And Frodin herself did not attempt to reconcile the inconsistencies.

Callaway challenges the ALJ's handling of the opinion evidence on other grounds, but none are persuasive. First, she says that the ALJ should have put more weight on Frodin's status as an examining consultant, citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But *Beardsley* doesn't stand for the proposition that the ALJ must adopt the opinion of an examining consultant. Rather, the court simply stated that the ALJ must give a "valid explanation" when favoring other evidence over such an opinion. *Id.* As discussed above, the ALJ gave multiple reasons for finding that Frodin's opinion was not to entitled to more weight, and those reasons were valid.

Second, Callaway says, "[i]f Dr. Frodin's opinion is rejected, we are left insufficient evidence and the potential for pure speculation." Dkt. 11, at 17. Callaway doesn't develop this argument or cite relevant authority. But presumably Callaway means to contend that the ALJ

has a duty to develop the record, so he was required to consult another expert if he determined that Frodin's opinion was flawed. *See Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013) ("[I]f the ALJ thought this evidence insufficient as she apparently did it was her responsibility to recognize the need for additional evaluations."). But there was other evidence in the record besides Frodin's opinions regarding Callaway's limitations. To begin with, the ALJ did give some weight to Frodin's mental status examination. R. 1244. As noted above, he also considered other medical opinions (including that of Callaway's counselor), Callaway's work history, and her daily activities. Callaway fails to explain why all of that evidence was insufficient to allow the ALJ to assess Callaway's mental limitations.

The court concludes that the ALJ's handling of the opinion evidence is supported by substantial evidence.

## B.  Residual functional capacity assessment

Callaway contends that the ALJ erred by giving weight to the opinions of reviewing consultants Esther Lefevre and Edmund Musholt but then failing to incorporate all of their limitations into the RFC. Specifically, Callaway points to a section of the consultants' mental residual functional capacity assessment (MRFCA) in which the consultants are instructed to "rate" the claimants' limitations in several predetermined categories. The consultants wrote that Callaway was "moderately limited" in the category for "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customer tolerances." R. 169, 196. Citing *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019), Callaway contends that the ALJ erred by failing to include those limitations in the RFC or explain why he declined to include them.

*DeCamp* does not hold that an ALJ errs anytime that he or she fails to account for any answer provided on a standardized form. Rather, the important question is whether the ALJ adequately accounts for all of the limitations that are supported by the record. *Id.* And the court of appeals has recognized in multiple cases that standardized questions and answers are less useful than an expert's explanation in his or her own words. *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). In this case, the probative value of the portion of the form that Callaway cites is particularly limited because it relates to a broad category rather than to a single, discrete ability.

In the narrative portion of the assessment, Lefevre wrote the following:

> The clmt c/o chronic pain with a h/x of depression anxiety and substance abuse. Medical evidence indicates clmt struggles with pain mood swings and panic attacks which have been managed by medications. With the clmt's conditions she may from time to time be moderately limited in her ability to carry out detailed tasks, focus for sustained periods, and perform activities w/I customary tolerances.

R.169. This narrative makes it clear that Lefevre did not believe that Callaway was limited in her ability to maintain regular attendance or be punctual. Rather, Lefevre was only concerned with Callaway's "ability to perform activities within a schedule," which Lefevre accounted for by writing that Callaway was moderately limited in her ability to "perform activities [within] customary tolerances."[3] The ALJ accounted for that limitation in the RFC by including a restriction that Callaway cannot perform "piecework" or "fast-moving assembly-line type work." R. 1236.

---

[3] Musholt adopted Lefevre's limitations but did not add anything meaningful to his narrative, stating only that Callaway "struggles with attn and conc[en]tration as a result of ongoing pain and m[ental] h[ealth] s[ymptoms]." R. 197.

Callaway cites no evidence from the record suggesting that she had difficulty maintaining attendance and being punctual. Instead, she contends in her opening brief that the ALJ failed to adequately support the pace-related restrictions. Because those restrictions are based on limitations found by the reviewing consultants, the court disagrees. But even if Callaway were correct that the ALJ erred in finding limitations related to pace, that error would be harmless. The purpose of this court's review is not to nitpick the ALJ's decision for mistakes, but rather to find legal errors that could have prevented the claimant from receiving benefits. If an ALJ erroneously finds that a claimant is more limited than she really is, that error doesn't harm the claimant, so it is not a basis for a remand.

In her reply brief, Callaway argues for the first time that the ALJ failed to adequately define "piecework" and "fast-moving assembly-line type work." Dkt. 14, at 6–8. Again, Callaway forfeited this argument by failing to raise it in her opening brief. *Harper*, 433 F.3d at 528. In any event, if Callaway's position is that she doesn't have any pace-related limitations, then any failure to define these terms more precisely is harmless. And even if that were not Callaway's position, this argument would fail because Callaway doesn't identify any pace-related limitations that she has that would require a more precise definition. A claimant is not entitled to a remand if she does not "identify medical evidence that would justify further restrictions." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

## C. Migraines

Callaway contends that the ALJ erred by finding that her migraines are a severe impairment without including any restrictions related to the migraines in the RFC or explaining why. In response, the commissioner makes two arguments. First, the commissioner acknowledges that the ALJ's decision does not include a section that explicitly explains why

8

the ALJ did not include restrictions for migraines but says that it is reasonable to infer that he declined to include migraine-related restrictions for the same reasons that he found that the migraines did not meet or equal a medical listing: Callaway rarely sought urgent care for her migraines, and, when she did, she was able to effectively treat them. R. 1230. Second, the commissioner says that, even if the ALJ erred, the error was harmless because Callaway hasn't identified any additional restrictions that the ALJ should have included in the RFC to account for her migraines.

The court is persuaded by both of these arguments. Callaway doesn't challenge the ALJ's analysis in which he concludes that Callaway's migraines are adequately treated through medication. If the court accepts that conclusion, then there is no basis for including additional restrictions in the RFC for migraines. *Hinds*, 799 F. App'x at 401 (ALJ's failure to consider migraines harmless when evidence showed that plaintiff's migraines were well controlled by medication). Although the ALJ's decision would have been clearer if the ALJ had expressly stated why he wasn't including migraine-related restrictions, the court of appeals has instructed district courts "to read the ALJ's decision as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004), and "not [to] discount [the ALJ's reasoning] simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Under these principles, it is reasonable to construe the ALJ's decision as finding that Callaway doesn't need any restrictions for migraines because she has them under control. And because Callaway hasn't identified any restrictions that the ALJ should have included, any error is harmless. *See Loveless*, 810 F.3d at 508.

In her reply brief, Callaway says that "normally [she] may have to agree with the Commissioner" that she was required to identify a restriction that the ALJ should have

included. Dkt. 14, at 16. But she says this case is different because the Appeals Council directed the ALJ to further consider Callaway's migraines.[4]

It is not clear what point Callaway is making. The court is not reviewing the ALJ's decision to determine whether it complied with all the Appeals Council's rulings; the question is whether the decision is supported by substantial evidence. Callaway cites no authority for the view that even harmless errors require a remand when the error is a failure to address an issue as directed by the Appeals Council. In any event, the ALJ *did* give additional consideration to Callaway's migraines, as instructed by the council. The discussion of migraines in the 2017 ALJ decision was limited to a conclusion that the migraines did not meet or equal a medical listing and an observation that Callaway treated her migraines "conservatively." R. 20, 25. The 2019 decision goes into significantly greater detail about Callaway's history with migraines and why the ALJ concluded that the migraines aren't disabling. R. 1229–30.

## D. Conclusion

Callaway has failed to identify any errors by the ALJ that require a remand. In a thorough opinion, the ALJ adequately explained why he believed that Callaway did not meet the requirements for disability benefits. The court concludes that the ALJ's decision is supported by substantial evidence.

---

[4] After this court remanded the case in 2018, the Appeals Council gave the ALJ additional instructions for reevaluating Callaway's claim. R. 1310.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the May

14, 2020 oral argument is CANCELED. The clerk of court is directed to enter judgment in

favor of the commissioner and close this case.

Entered May 7, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge